UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

JULIO CESAR CASTILLO CARBAJAL, JENNIFER  :
ALICIA ARGUETA MORALES, and CENIA        :
MORAN, on behalf of themselves and all others :
similarly situated,                      :
                                         :
                        Plaintiffs,      :          **COLLECTIVE AND**
                                         :          **CLASS ACTION**
            -against-                    :          **COMPLAINT**
                                         :
K&P FACILITIES MAINTENANCE INC.,         :
JIMENEZ FACILITY MAINTENANCE LLC, and    :          **JURY TRIAL DEMANDED**
CARLOS ESPINOZA,                         :
                                         :
                        Defendants.      :
------------------------------------------------------------------- X

Plaintiffs Julio Cesar Castillo Carbajal, Jennifer Alicia Argueta Morales, and Cenia Moran (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys Pechman Law Group PLLC, complaining of defendants K&P Facilities Maintenance Inc., Jimenez Facility Maintenance LLC, and Carlos Espinoza (collectively, "Defendants"), allege:

## NATURE OF THE ACTION

1.    Plaintiffs were hired as cleaning workers at Vassar Brothers Medical Center ("Vassar Brothers") and Garnet Health Medical Center ("Garnet Health") during the COVID-19 crisis.  Despite regularly working over forty hours per workweek, Defendants failed to pay Plaintiffs and other cleaning workers the statutorily required overtime wage rate for hours worked over forty per workweek.  Moreover, Defendants failed to furnish Plaintiffs and other cleaning workers with accurate wage statements accompanying each payment of wages and with wage notices when they were hired or whenever their rate of pay changed.  Additionally, Plaintiffs and other cleaning workers spent more than 25% of their work time performing duties that were physical in nature, qualifying them as

"manual workers" under the New York Labor Law ("NYLL").   In spite of this, Defendants paid them on a bi-weekly basis for portions of their employment, in violation of the frequency of payments section of the NYLL.

2.      Plaintiffs bring this action on behalf of themselves and all similarly situated non-exempt cleaning workers ("Cleaning Workers") to recover unpaid overtime wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), Articles 6 and 19 of the New York Labor Law ("NYLL"), the New York Wage Theft Prevention Act ("WTPA").

## JURISDICTION

3.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because many of the events giving rise to Plaintiffs' claims arose at Vassar Brothers and Garnet Health, which are both located in this district.

## THE PARTIES

**Plaintiff Julio Cesar Castillo Carbajal**

5.      Julio Cesar Castillo Carbajal ("Castillo") resides in Orange County, New York.

6.      Castillo worked for Defendants as a Cleaning Worker at Garnet Health from approximately June 2021 through January 25, 2022.

**Plaintiff Jennifer Alicia Argueta Morales**

7.      Jennifer Alicia Argueta Morales ("Argueta") resides in Orange County, New York.

8.      Argueta worked for Defendants as a Cleaning Worker at Vassar Brothers from approximately March 2020 through September 2020 and at Garnet Health from approximately September 2021 through February 12, 2022.

**Plaintiff Cenia Moran**

9.      Cenia Moran ("Moran") resides in Orange County, New York.

10.     Moran worked for Defendants as a Cleaning Worker at Garnet Health from approximately September 20, 2021 through February 12, 2022.

**Defendant K&P Facilities Maintenance Inc.**

11.     Defendant K&P Facilities Maintenance Inc. ("K&P") is a New York corporation.

12.     K&P's headquarters and primary address is listed as 230 Ferry Road, Old Saybrook, CT 06475 on New York State's Division of Corporations entity filings.

13.     K&P offers corporate customers cleaning and maintenance services across New York State.  In the wake of the COVID-19 pandemic, K&P entered into contracts to provide hospitals and other medical institutions, including Vassar Brothers and Garnet Health, with COVID-19 cleaning and decontamination services.

14.     K&P is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

15.     K&P has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

16.     In each of the three years preceding the filing of this Complaint, K&P's annual gross volume of sales exceeded $500,000.

17.     K&P and Jimenez Facility Maintenance LLC are joint employers of Plaintiffs and the Cleaning Workers while working at Garnet Health.  Combined with Jimenez Facility Maintenance LLC, K&P's annual gross volume of sales within the last three years exceeded $500,000.

**Defendant Jimenez Facility Maintenance LLC**

18.     Defendant Jimenez Facilities Maintenance LLC ("JFM") is a New York Limited Liability Company.

19.     JFM's address is listed as 2721 W Main St., Apt. B, Wappingers Falls, NY 12590 on New York State's Division of Corporations entity filings.

20.     JFM is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

21.     JFM has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

22.     Since its initial filing with New York State's Division of Corporations on July 29, 2021, JFM's annual gross volume of sales has exceeded $500,000.

23.     K&P and JFC are joint employers of Plaintiffs and the Cleaning Workers while working at Garnet Health.  Combined with K&P, JFM's annual gross volume of sales within the last three years exceeded $500,000.

**Defendant Carlos Espinoza**

24.     Carlos Espinoza ("Espinoza") is an owner of K&P and is identified as the Chief Executive Officer of K&P on New York State's Division of Corporations entity filings.

25.     Throughout Plaintiffs' employment, Espinoza held and exercised authority over K&P personnel decisions, including the authority to hire and fire employees, set employee wage rates, assign employees' schedules and duties, and maintain employee pay records.

26.     Espinoza exercised sufficient control over the operations of K&P to be considered the employer of the Cleaning Workers, including the Plaintiffs, under the FLSA and NYLL.

**K&P and JFM were Plaintiffs' Joint Employers**

27.     Upon information and belief, K&P began contracting with healthcare institutions following the onset of the COVID-19 crisis in March 2020 to clean and decontaminate patient care areas and other facilities.

28.     For example, Plaintiff Argueta worked for K&P at Vassar Brothers from March 2020 through September 2020.

29.     At the Garnet Health job site, K&P employees worked under JFM and its alleged owner, Sergio Danielo Jimenez Giron ("Danielo").  Danielo was listed as JFM's chief executive officer and agent in the entity's initial filing to New York's Department of State on July 29, 2021.  Danielo was previously employed as a K&P supervisor at Vassar Brothers and other job sites.

30.     Despite being two separate entities, K&P and JFM operated as a single integrated enterprise that jointly employed Plaintiffs and other Cleaning Workers at Garnet Health.

31.     Throughout Plaintiffs' employment, K&P possessed and exercised substantial direct and immediate control over the working conditions of Plaintiffs and the Cleaning Workers.

32.     For example, throughout Plaintiffs' employment at Garnet Health, Danielo would regularly inform them that he had to discuss any changes to their schedules and work duties with Espinoza.

33.     Representatives of K&P and JFM would host meetings at Garnet Health for the Cleaning Workers where they would provide job training and discuss the hospital's feedback on their job performance.

34.     K&P had the power to terminate the employment of Plaintiffs and other Cleaning Workers.

35.     For example, Espinoza hired Plaintiff Castillo in June 2021 to work at Garnet Health.

36.     On February 12, 2022, K&P agent and Espinoza's daughter, Karla Espinoza, contacted Argueta via text message to inform her that she had been terminated from her position at Garnet Health.

37.     On January 25, 2022, Castillo was terminated by Danielo who informed him that "there was no more work for him" because Espinoza was unhappy that Castillo had been applying to work for other companies performing work at Garnet Health while employed by Defendants and that as a result, Espinoza directed Danielo to fire him.

38.     Plaintiffs and other Cleaning Workers at Vassar Brothers and Garnet Health wore ID cards identifying themselves as employees of K&P, as seen in the images below from Garnet Health:

 



39.     Plaintiffs and other Cleaning Workers at Vassar Brothers and Garnet Health

wore uniforms and apparel with K&P's logo, as seen in the images below:

 

 

40.     Plaintiffs and other Cleaning Workers at Garnet Health are pictured below in apparel with K&P's logo, following a training session led by K&P employees:





41.     While their pay was distributed by JFM, K&P controlled and determined Plaintiffs and other Cleaning Workers' rates of pay and compensation.

42.     For example, in January 2022, Garnet Health employee Sarai (last name unknown) who supervised Plaintiffs and other Cleaning Workers at Garnet Health told Argueta that she was entitled to sick pay for time spent caring for her daughter and that Sarai would speak with Espinoza to ensure that she was paid.

43.     Section 3(d) of the FLSA defines an employer to "include any person acting, directly and indirectly, in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

44.     Throughout their employment, K&P provided mandatory directions with respect to where, when, and how Cleaning Workers performed their daily work functions at Garnet Health and Vassar Brothers Medical Center, and therefore the cleaning workers were acting in the interest of K&P.

45.     Under the FLSA, multiple "employers" may qualify as a "Joint Employer." The economic reality of K&P's relationship with the Cleaning Workers mandates that K&P and JFM be treated as a Joint Employer.

## FACTUAL ALLEGATIONS

46.     Plaintiffs and other Cleaning Workers performed their duties at Vassar Brothers Medical Center located at 45 Reade Place, Poughkeepsie, NY 12601, and Garnet Health Medical Center located at 707 East Main Street, Middletown, NY 10940.

47.     As their primary work duties at Vassar Brothers, Cleaning Workers, including Plaintiff Argueta, wiped, mopped, swept, sanitized, and disinfected hallways, rooms, and other areas and surfaces.

48.     As their primary work duties at Garnet Health, Cleaning Workers, including the Plaintiffs, wiped, mopped, swept, sanitized, and disinfected hallways, patient rooms, emergency rooms, and any other areas and surfaces exposed to COVID-19 patients.

49.     While at Garnet Health, Cleaning Workers, including Plaintiffs, wore face shields, disposable gowns, N95 masks, and other personal protective equipment (PPE) while completing their work duties.

50.     Cleaning Workers, including Plaintiffs, spent more than 25% of their workdays at Vassar Brothers and Garnet Health performing physical work duties, such as cleaning, mopping, and wiping.

51. For portions of their employment, Defendants failed to pay Plaintiffs and other Cleaning Workers their wages on a weekly basis no later than seven calendar days after the end of each workweek.

52. Defendants failed to furnish Cleaning Workers, including Plaintiffs, with wage notices upon being hired or when their rates of pay changed.

53. With the exception of approximately two pay periods over December 2021 and January 2022, Defendants failed to furnish Cleaning Workers, including Plaintiffs, with wage statements with each payment of their wages throughout their respective employment periods.

54. Defendants' failure to comply with the WTPA's wage notice and wage statement requirements went beyond technical errors or omissions. Defendants deprived Cleaning Workers, including Plaintiffs, of wage notices in their entirety and of wage statements for the majority of their employment.

55. Without any explanation or notice of their wage rates on wage notices or wage statements, Cleaning Workers, including Plaintiffs were intentionally uninformed about the wage rates they were actually receiving, what pay periods were covered by each wage payment, and how their pay was computed, including whether they were properly compensated for overtime hours at time and one-half their regular rate of pay.

56. In other words, Defendants' failure to comply with the WTPA, when combined with their practice of paying wages in cash and personal checks with no formal documentation, was part of a scheme that deprived Cleaning Workers, including Plaintiffs, of the ability to know if they were being paid correctly and if not, exactly how much compensation they were entitled to, and led to the underpayment of wages alleged herein.

57.     The damages Cleaning Workers, including Plaintiffs, suffered because of the underpayment of their wages is directly traceable to Defendants' overt and intentional failure to comply with the WTPA's wage notice and wage statement requirements.

58.     Defendants K&P and Espinoza have previously been sued for their wage practices. For example, on November 24, 2021,  three Cleaning Workers filed a lawsuit in the Southern District of New York alleging substantially similar overtime pay and other wage violations under the NYLL and FLSA in a case titled *Fredy Luna Martinez, et al v. K&P Facilities Maintenance, Inc., and Carlos Espinoza*, Case No.  21-cv-9987 (PMH).  That case, involving seven Cleaning Workers, settled for $199,000.

**Julio Cesar Castillo Carbajal's Hours Worked and Wages Pay**

59.     Throughout his employment, Castillo worked seven-day workweeks with a base schedule from approximately 9:00 a.m. to 5:00 p.m. each day with two thirty-minute breaks.  However, Castillo would work elongated "double" shifts six to seven days a week where he would work from approximately 9:00 a.m. to sometime between 11:00 p.m. and 1:00 a.m. with two hour-long breaks for approximately seventy-nine to ninety-eight hours per workweek.  Approximately once every two or three weeks, Castillo would be given one day off.  On weeks that Castillo worked six days per week, his hours were reduced to approximately sixty-eight to seventy-two hours per workweek.

60.     Throughout his employment, Defendants paid Castillo $17.00 per hour worked, including for hours worked over forty per workweek.

61.     Defendants paid Castillo his wages in cash with no accompanying wage statement for all wage payments, with the exception of the last two wage payments he

received.  Defendants paid these last two wage payments in personal checks with no accompanying wage statement.

62.     Defendants paid Castillo on a weekly basis.

**Jennifer Alicia Argueta Morales's Hours Worked and Wages Pay**

63.     When employed by Defendants at Vassar Brothers, Argueta's base schedule was from Monday through Friday, from approximately 3:00 p.m. to 11:00 p.m. with a 30-minute lunch break.  However, she would regularly work weeks where she would be required to work elongated "double" shifts each day from 3:00 p.m. to sometime between 4:00 a.m. and 6:00 a.m. the following morning with an hour-long lunch break. Argueta worked between approximately thirty-seven and a half to seventy hours per workweek during this period.

64.      When employed by Defendants at Garnet Health, Argueta's regular schedule was Wednesday through Sunday, from 5:00 p.m. to 1:00 a.m. with an hour-long lunch break.  However, Argueta was regularly required to work an additional shift from 9:00 a.m. to 5:00 p.m., with another hour-long lunch break, three to four days a week.  As a result, Argueta worked between thirty-five to sixty-three hours per work week during this period.

65.     When employed by Defendants at Vassar Brothers, Defendants paid Argueta $14.00 per hour worked, including for hours worked over forty per workweek.

66.     When employed by Defendants at Garnet Health, Defendants paid Argueta $20.00 per hour worked, including for hours worked over forty per workweek.

67.     Defendants paid Argueta her wages in cash with no accompanying wage statement throughout her employment.

68.     Defendants paid Argueta on a weekly basis.

**Cenia Moran's Hours Worked and Wages Pay**

69.     From September 2021 through October 2021, Moran worked five to six days per workweek from approximately 5:00 p.m. to 1:00 a.m. each day, with two thirty-minute breaks each day, for approximately thirty-five to forty-two hours per workweek.

70.     From November 2021 through the end of her employment with Defendants, Moran worked six-day workweeks from 9:00 a.m. to 5:00 p.m. each day, with two thirty-minute breaks each day, for approximately forty-two hours per workweek.  However, Moran was often scheduled to work multiple consecutive workweeks without a day off. For example, in January 2022, Moran worked her regular 9:00 a.m. to 5:00 p.m. shift for ten days straight when she was forced to cover for her daughter, Argueta, when her granddaughter was sick with COVID-19 and Argueta was in quarantine.

71.     Throughout her employment, Defendants paid Moran $20.00 per hour worked, including for hours worked over forty per workweek.

72.     Defendants paid Moran her wages in cash until December 20, 2021, when she began to receive checks from JFM.

73.     From December 20, 2021 through the end of her employment, Defendants began paying Moran and other Cleaning Workers on a bi-weekly basis.  For example, Moran received her wages for the pay period December 20, 2021 to January 2, 2022 on January 6, 2022, eleven days after the end of the first week in that pay period.

## COLLECTIVE ACTION ALLEGATIONS

74.     Plaintiffs bring this action on behalf of themselves and all similarly situated persons who have worked as Cleaning Workers (i.e., non-exempt cleaning workers) for Defendants within the three years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective").

75.     The FLSA Collective consists of approximately forty Cleaning Workers who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages.

76.     Plaintiffs and the FLSA Collective have worked over forty hours per workweek, have performed virtually the same cleaning duties, and have been subjected to Defendants' common pay policies depriving them of overtime wages at the rate of one and one-half times their regular hourly wage rates for all hours worked in excess of forty per workweek.

77.     Defendants are aware or should have been aware that the FLSA required them to pay Cleaning Workers an overtime premium for hours worked in excess of forty per workweek.

78.     Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiffs and the FLSA Collective.

79.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  All similarly situated Cleaning Workers can be readily identified and located through Defendants' records.  The similarly situated Cleaning Workers should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

80.     The claims in this Complaint arising out of the NYLL are brought by Plaintiffs under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all similarly situated non-exempt employees ("Cleaning Workers), who work or have worked for Defendants in the six years prior to the filing of this Complaint (the "Rule 23 Class").

81.     The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

82.     The size of the Rule 23 Class is at least forty individuals, although the precise number of such employees is unknown.

83.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

84.     Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, *inter alia*, the following:

> a.   whether Defendants violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142, as alleged herein;
>
> b.   whether Defendants failed to pay non-exempt employees at the correct overtime rate for all time worked in excess of forty hours per week;
>
> c.   whether Defendants failed to provide non-exempt employees with accurate wage statements as required by the NYLL and WTPA;
>
> d.   whether Defendants failed to furnish the New York Rule 23 Class with wage notices as required by the WTPA;
>
> e.   whether Defendants failed to pay Cleaning Workers, who were manual laborers, on a weekly basis, in violation of NYLL § 191(1)(a); and
>
> f.   the nature and the extent of the class-wide injury and the measure of damages for those injuries.

85.     Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiffs and the members of the Rule 23 Class work or have worked for Defendants at various times within the applicable six-year statutory period.  They enjoy the same statutory rights under the NYLL to be paid at the overtime rate for all hours worked over forty in a workweek.  Plaintiffs and the members of the Rule 23 Class have

sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

86.     Plaintiffs and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

87.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

88.     Plaintiffs have retained legal counsel competent and experienced in wage and hour litigation and class action litigation.

89.     There is no conflict between Plaintiffs and the Rule 23 Class members.

90.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures. Although the relative damages suffered by the individual class members are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

91.     This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## FIRST CLAIM
### (FLSA – Unpaid Overtime)

92.     Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

93.     Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages at the rate of one and one-half their regular hourly wage rates, which cannot be less than the applicable minimum wage rate, per hour worked in excess of forty per workweek.

94.     Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a) and employed Plaintiffs and the FLSA Collective.

95.     Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs and the FLSA Collective's compensation.

96.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

97.     Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SECOND CLAIM
### (NYLL – Unpaid Overtime)

98.     Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

99.     Pursuant to the NYLL and supporting NYDOL Regulations, Defendants were required to pay Plaintiffs and the Rule 23 Class one and one-half (1½) times their regular hourly rates of pay for all hours worked in excess of forty per workweek.

100.    Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting NYDOL Regulations, and employed Plaintiffs and the Rule 23 Class.

101.    Defendants failed to pay Plaintiffs and the Rule 23 Class overtime wages equal to one and one-half (1½) times their regular hourly rates of pay, which could not be less than the minimum wage rate, per hour worked in excess of forty per workweek.

102.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class overtime wages.

103.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

**THIRD CLAIM**
**(NYLL § 191 – Frequency of Payments)**

104.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

105.    In 1967, the New York State legislature amended NYLL § 198 to impose "stronger sanctions" in the form of liquidated damages to compel employers to comply with the requirements of Article 6 of the NYLL, including the frequency of payment requirements set forth in Section 191 of the NYLL.  These "stronger sanctions" serve to "compensate the employee for the loss of the use of money to which he [or she] was entitled," as is the case with late wage payments, because an employee loses "the use of money [when] he or she is never paid, partially paid, or paid late." *Vega v. CM & Assocs. Constr. Mgt., LLC*, 175 A.D.3d 1144, 1146 n. 2 (1st Dep't 2019) (citation omitted).  This concept is not new.  For decades, the United States Supreme Court has likewise interpreted the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, on which the NYLL is based, as entitling employees to recover liquidated damages "regardless of whether an

18

employee has been paid wages owed before the commencement of the action."  *Id*. (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

106.    Defendants violated Section 191 of the NYLL by paying Moran and other Cleaning Workers wages on a bi-weekly basis for portions of their employment.  As "manual workers" within the meaning of the NYLL, they should have been paid "weekly and not later than seven calendar days after the end of the week the[ir] wages are earned." N.Y. Lab. L. § 191(1)(a)(i).

107.    Throughout their employment, Cleaning Workers, including Plaintiff Moran, spent at least 25% of their working time performing physical tasks.

108.    Cleaning Workers, including Plaintiff Moran, were "manual workers" within the meaning of NYLL § 191(1)(a).

109.    Defendants should have paid Cleaning Workers, including Plaintiff Moran, on a weekly basis, "and not later than seven calendar days after the end of the week in which the wages were earned."  N.Y. Lab. L. § 191(1)(a).

110.    Because Defendants failed to pay Cleaning Workers, including Plaintiff Moran, on a weekly basis for portions of their employment, in addition to other recovery available to them as set forth in this Complaint, Cleaning Workers are entitled to recover liquidated damages equal to their wages paid a week late in every bi-weekly pay period.

**FOURTH CLAIM**
**(NYLL – Failure to Provide Wage Notices)**

111.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

112.    The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

113.    Defendants failed to furnish to Plaintiffs and the Rule 23 Class at the time of hiring, and whenever there was a change to Plaintiffs' and the Rule 23 Class's rates of pay, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

114.    Due to Defendants' violation of NYLL § 195(1), Plaintiffs and the Rule 23 Class are entitled to recover from Defendants liquidated damages of $50.00 per day that the violation occurred, up to a maximum of $5,000.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

**FIFTH CLAIM**
**(NYLL – Failure to Provide Accurate Wage Statements)**

115.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

116.    Defendants failed to furnish Plaintiffs and the Rule 23 Class, with each wage payment, with a statement accurately listing: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

20

117.    Due to Defendants' violation of the NYLL, § 195(3), Plaintiffs and the Rule 23 Class are entitled to recover from the Defendants liquidated damages of $250.00 per workday, up to a maximum of $5,000.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Rule 23 Class, respectfully request that this Court:

a.    certify this case as a class action pursuant to Rule 23 for the class of employees described herein, certification of Plaintiffs as the class representatives, and designation of Plaintiffs' counsel as Class Counsel;

b.    designate this action as a collective action on behalf of the FLSA Collective and authorize the prompt issuance a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

c.    declare that Defendants violated the overtime wage provisions of the FLSA and the NYLL;

d.    declare that Defendants violated the frequency of payments provision of the NYLL;

e.    declare that Defendants violated the notice and record keeping provisions of the NYLL and WTPA;

f.    declare that Defendants' violations of the FLSA and NYLL were willful;

g.    award Plaintiffs, the FLSA Collective, and the Rule 23 Class unpaid overtime wages;

h.      award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendants' failure to pay wages on a weekly basis in violation of the NYLL;

i.      award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish them with a notice at the time of hiring or whenever there was a change in their rates of pay, in violation of the NYLL and WTPA;

j.      award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish to furnish them with accurate wage statements at the end of each pay period, in violation of the NYLL and WTPA;

k.      award Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and the NYLL;

l.      award Plaintiffs and the Rule 23 Class pre- and post-judgment interest under the NYLL;

m.      awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs of the action pursuant to the FLSA and the NYLL; and

n.      award such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

a trial by jury in this action.

Dated:  New York, New York
       January 12, 2023

PECHMAN LAW GROUP PLLC

By:
   Louis Pechman
   Vivianna Morales
   Christian Mercado
   Pechman Law Group PLLC
   488 Madison Avenue, 17th Floor
   New York, New York 10022
   Tel.: (212) 583-9500
   pechman@pechmanlaw.com
   morales@pechmanlaw.com
   mercado@pechmanlaw.com

   *Attorneys for Plaintiffs, the*
   *Putative FLSA Collective, and Putative*
   *Rule 23 Class*