UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JULIO CESAR CASTILLO CARBAJAL,
JENNIFER ALICIA ARGUETA MORALES, and
CENIA MORAN, *on behalf of themselves and*
*all others similarly situated*,

                               Plaintiffs,                  **DECISION AND ORDER**

            -against-                        23-cv-269 (AEK)

K&P FACILITIES MAINTENANCE INC.,
JIMENEZ FACILITY MAINTENANCE LLC,
and CARLOS ESPINOZA,

                       Defendants.
-----------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[1]**

      Plaintiffs Julio Cesar Castillo Carbajal ("Castillo Carbajal"), Jennifer Alicia Argueta

Morales ("Argueta Morales"), and Cenia Moran ("Moran") (collectively, "Plaintiffs"), on behalf

of themselves and all others similarly situated, commenced this action on January 12, 2023,

asserting claims against Defendants K&P Facilities Maintenance Inc. ("K&P"), Jimenez Facility

Maintenance LLC ("Jimenez"), and Carlos Espinoza ("Espinoza") (collectively, "Defendants")

for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL")

based on the alleged failure to pay overtime wages, failure to pay wages on a weekly basis, and

failure to provide either wage notices or accurate wage statements.  ECF No. 1 ("Complaint").

Before the Court is the parties' application for approval of a settlement agreement in accordance

with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  ECF No. 34

---

[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).
ECF No. 32.

("*Cheeks* Mot.").  For the reasons that follow, the Court APPROVES the proposed settlement agreement.

## DISCUSSION

In the Second Circuit, "parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the district court or the [United States] Department of Labor."  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020).  Thus, a district court in this Circuit must review a proposed FLSA settlement and determine whether it is fair and reasonable.  *See, e.g.*, *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-cv-7131 (KMK), 2021 WL 38264, at *2 (S.D.N.Y. Jan. 5, 2021).  When reviewing a proposed settlement agreement in an FLSA case, district courts consider the "totality of circumstances," *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), to assess whether the agreement is fair and reasonable, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (quoting *Wolinsky*, 900 F. Supp. 2d at 335).  In addition, the following factors "weigh against approving a settlement":

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted).  "[T]here is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Xiao v. Grand Sichuan Int'l St. Marks, Inc.*, Nos. 14-cv-9063, 15-cv-6361 (RA), 2016 WL 4074444, at *2 (S.D.N.Y. July 29, 2016) (quotation marks omitted).

Having reviewed the parties' submissions in support of the proposed settlement, and having considered the totality of the circumstances, the Court finds that the parties' proposed settlement agreement is fair and reasonable.

All five *Wolinsky* factors weigh in favor of approval.  First, the settlement agreement provides for a total settlement payment of $35,000, with $23,018.67 payable to Plaintiffs and $11,981.33 payable to Plaintiffs' counsel as attorneys' fees and costs.  *See* ECF No. 34-1 ("Settlement Agreement") ¶¶ 6-7.  Plaintiffs have calculated their maximum recovery in this case to be $77,052.07—$29,781.92 for Castillo Carbajal, $33,069.55 for Argueta Morales, and $14,200.60 for Moran.  *Cheeks* Mot. at 3.  The amounts payable to each of the Plaintiffs— $8,897.10 to Castillo Carbajal, $9,879.25 to Argueta Morales, and $4,242.32 to Moran, *see* Settlement Agreement ¶¶ 6-7—constitute approximately 30 percent of the maximum potential individual recovery for each of the Plaintiffs, and more than 90 percent of the total alleged unpaid wages for each of the Plaintiffs, had they fully prevailed at trial.  .  These percentages of recovery are in line with or greater than recovery amounts in other FLSA cases in this District where courts have approved settlement terms.  *See, e.g.*, *Santos v. YMY Mgmt. Corp.*, No. 20-cv-1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving settlement where plaintiff's recovery was "approximately 18% of Plaintiff's total alleged damages and approximately 39% of his total alleged minimum wage and overtime owed," and noting that

"[c]ourts in this District routinely award settlement amounts within this range.") (collecting cases).

Second, the settlement will enable the parties to avoid significant additional expenses and burdens associated with establishing their claims and defenses.  As stated in the parties' motion for *Cheeks* approval, "[i]f this Action were to continue, the Parties would have to take and defend numerous depositions to resolve the disputed issues of fact, including the authenticity of the records produced by Jimenez[2], the hours worked by Plaintiffs, and whether the Defendants are joint employers of the Plaintiffs." *Cheeks* Mot. at 5.  Document discovery would still have to be completed, with "possible ESI concerns surrounding potential text messages and e-mails exchanged between the Parties." *Id.*  And the parties would then face the expense and uncertainty of possible summary judgment motion practice and/or trial, both of which will be avoided by settlement of the action.

Third, both sides would have faced significant litigation risks if this case had proceeded to trial.  Jimenez asserts that according to the limited records it has produced, Argueta Morales and Moran were properly paid, and Jimenez insists that it never employed Castillo Carbajal. *Id.* at 4-5.  K&P and Espinoza maintain that they were not Plaintiffs' employers and cannot be considered Plaintiffs' joint employer along with Jimenez. *Id.*  Plaintiffs, on the other hand, contend that they were jointly employed by all Defendants, who failed to pay them proper overtime wages, and they challenge the accuracy and authenticity of the limited records produced by Jimenez. *Id.* at 5. Under the circumstances, it is possible that Plaintiffs could recover nothing at all if they were to proceed to trial.  And even if Plaintiffs were to prevail on

---

[2] Jimenez made a limited production of documents, including handwritten time logs, pay stubs, and schedules, but only for Argueta Morales and Moran and only for part of their period of employment with Jimenez. *Cheeks* Mot. at 4.

some or all of their claims, there is a real possibility that K&P and Espinoza could be dismissed

from the action, which would leave Plaintiffs to attempt to try to collect a judgment only from

Jimenez, which is no longer in business.  *Id.*  Because of the anticipated risks and costs involved

in pursuing this matter through discovery and trial, settlement is an effective means of resolving

the litigation for both sides.

Fourth, the proposed settlement, which was reached after a day-long mediation with a

court-appointed mediator, is the product of arm's-length bargaining between experienced

counsel.  *Id.* at 6.

Fifth, the Court has no reason to believe that the proposed settlement is the product of

fraud or collusion.

Moreover, a number of the factors set forth in *Wolinsky* that weigh against approving a

settlement do not exist in this case.  Given that the employment relationship between Plaintiffs

and Defendants has ended, there is no likelihood that the circumstances that gave rise to this

lawsuit will recur.  Additionally, the Complaint in this matter does not appear to raise novel

factual or legal issues that would further the development of law in this area.

That said, certain of the *Wolinsky* factors potentially weigh against settlement approval—

specifically the existence of similarly situated plaintiffs and Defendants' history of FLSA non-

compliance.  K&P and Espinoza were named as defendants in a wage-and-hour lawsuit filed by

nine plaintiffs on November 24, 2021.  *See Martinez v. K&P Facilities Maintenance Inc.*, Dkt.

No. 21-cv-9987 (PMH).  The defendants in the *Martinez* action reached a settlement with eight

of the plaintiffs in that action in or about April 2022.  *Id.* at ECF Nos. 26, 40.[3]  In addition, K&P

_____

[3] The claims of the final plaintiff in that action were dismissed due to that plaintiff's
failure to respond to court orders regarding discovery.  *See* Dkt. No. 21-cv-8897 at ECF No. 67.

and Espinoza are named as defendants in another wage-and-hour lawsuit filed by three plaintiffs on January 9, 2023, just three days before this lawsuit was filed.  *See Elescano v. K&P Facilities Maintenance, Inc.*, Dkt. No. 23-cv-175 (NSR) (AEK).  In fact, the *Elescano* case was referred to the undersigned for general pretrial supervision on April 27, 2023, and a status conference is scheduled to take place with the undersigned later this week.  *Id.* at ECF No. 19.  Defendants are represented by the same attorneys in all three of these proceedings, and the *Martinez* action is referenced in the Complaint here, yet neither of these other lawsuits were addressed—as they should have been—in the *Cheeks* Motion.

Nevertheless, given all of the other factors that weigh in favor of settlement approval, the existence of the *Martinez* and *Elescano* lawsuits is not a sufficient reason for the Court to reject the proposed settlement here.  As detailed above, the terms of this settlement are fair and reasonable for the individual Plaintiffs in this action, and there are numerous reasons why settlement of this individual lawsuit is in the best interests of the parties.  Moreover, Plaintiffs are the only employees affected by the settlement and dismissal of this lawsuit—Plaintiffs' release here does not impair the rights of any other individuals who may have valid claims against Defendants.  The Court is not aware of any *other* individuals who may be similarly situated to these employees who wish to pursue claims against these Defendants.  *See Picorelli v. Watermark Contractors Inc. et al.*, No. 21-cv-2433 (KMK), 2021 WL 4973612, at *4 (S.D.N.Y. Oct. 26, 2021) (Court did not disapprove of settlement based on allegations in complaint regarding similarly situated individuals).  Furthermore, the "history of noncompliance" factor is not implicated at all by the *Elescano* lawsuit, which was filed at nearly the exact same time as this case, and is only partially implicated by *Martinez*, which was filed just over one year earlier, because the allegations of improper wage-and-hour practices in all three lawsuits cover

substantially similar periods of time.  This is not a situation where Defendants previously settled

one or more FLSA/NYLL lawsuits, only to appear again as defendants years later after

continuing to engage in the same improper labor practices.  While it is certainly relevant that

Defendants faced multiple lawsuits from different employees regarding their alleged failures to

comply with federal and state wage-and-hour laws, that fact does not preclude approval of the

settlement of this action when weighed against all of the reasons why settlement is an

appropriate and beneficial outcome for the parties here.

      The Settlement Agreement also does not contain any problematic provisions that would

preclude court approval.  There are no confidentiality provisions in the proposed agreement, and

although the agreement does include a mutual non-disparagement clause, that provision

incorporates the necessary carve-out for truthful statements by Plaintiffs about their experience

litigating this case, about Plaintiffs' claims in this matter, about Plaintiffs' alleged experience

working with Defendants, and about the resolution of the case.  *See* Settlement Agreement ¶ 14;

s*ee also Pena v. Top Concourse Elecs., Inc.*, No. 20-cv-1015 (JLC), 2020 WL 6590713, at *1

(S.D.N.Y. Nov. 10, 2020) (mutual non-disparagement provision must include carve-out for

truthfulness); *Cortes v. New Creators, Inc.*, No. 15-cv-5680 (PAE), 2016 WL 3455383, at *4

(S.D.N.Y. June 20, 2016).  The Settlement Agreement also contains release provisions that are

appropriately limited to the wage-and-hour claims asserted in this action and related claims that

could have been asserted.  *See* Settlement Agreement ¶¶ 1-2, 11; *see also, e.g., Illescas v. Four

Green Fields LLC*, No. 20-cv-9426 (RA), 2021 WL 1254252, at *1 (S.D.N.Y. Apr. 5, 2021).

Paragraph 12 of the Settlement Agreement could, at first glance, be read as an overbroad release,

inasmuch as it emphasizes that Plaintiffs' release includes "unknown and/or unsuspected rights,

claims, demands, and causes of action, if any, to the same effect as those terms and provisions

relating to any other claims, demands, and/or causes of action herein specified." Settlement Agreement ¶ 12. But this language must be understood in context with the entire Settlement Agreement, and especially the release provisions of paragraph 11, which are unambiguously limited to wage-and-hour claims. The Court therefore reads paragraph 12 of the Settlement Agreement as referring only to those wage-and-hour claims addressed in paragraph 11, and the approval of the Settlement Agreement is granted with this specific understanding.

With respect to attorneys' fees and costs, the proposed settlement provides for Plaintiffs' counsel to receive $11,509.33 in fees—*i.e.*, exactly one-third of the total settlement amount net of costs—and $472 in costs. "Courts in this District routinely award one third of a settlement fund as a reasonable fee in FLSA cases." *Santos*, 2021 WL 431451, at *2 (cleaned up). "However, even when the proposed fees do not exceed one third of the total settlement amount, courts in this Circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Id.* (quotation marks omitted). Plaintiffs' counsel has submitted contemporaneous time records to substantiate the fee application. *See Fisher*, 948 F.3d at 600 ("The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs."). It would have been better for counsel to have submitted additional information about the timekeepers whose work is reflected in these records, including who the timekeepers were and their levels of experience. The Court can reasonably infer, however, based on the Court's review of the docket and the billing records, that the three principal timekeepers are the three attorneys who have entered notices of appearance in this action, and that they have billing rates of $225, $500, and $600 per hour (with by far the fewest hours allocated to Louis Pechman, at $600 per hour). It is also clear, based on the $125 hourly rate reflected in the billing records and the associated tasks for that timekeeper, that one of the timekeepers ("MM") is a paralegal

(or billed at a paralegal rate in connection with this matter). *See generally* ECF No. 34-2 ("Billing Records").

Applying the lodestar method, Plaintiffs' counsel spent a total of 82.9 hours on this case, and their total fee amounts to $27,292.50 ($27,764.50 minus $472 in costs). *See* Billing Records. The proposed attorneys' fee of $11,509.33 represents approximately 42 percent of the lodestar amount of $27,292.50, which is fair and reasonable given the facts and circumstances of this case. *See Gervacio v. ARJ Laundry Servs. Inc.,* No. 17-cv-9632 (AJN), 2019 WL 330631, at *3 (S.D.N.Y. Jan. 25, 2019) ("The true lodestar amount is therefore greater than the fee award contained in the settlement agreement. As a result, the Court does not disturb the calculation of attorneys' fees . . . .").[4]

In addition, Plaintiffs' counsel seeks costs of $472—$402 for the court filing fee and a $70 process service fee—but they have provided no documentation of these costs, other than listing them in their billing records. *See* Billing Records. Counsel in FLSA cases may be awarded reasonable out-of-pocket expenses that are properly substantiated. *See, e.g., Cortes*, 2016 WL 3455383, at *6 ("Court fees reflected on the Court's docket are sufficiently substantiated, as are costs for which a claimant provides extrinsic proof, such as invoices or receipts. A sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items is also sufficient.") (citations omitted). Here, the court filing fee of $402 is reflected on the docket, and thus is sufficiently substantiated. However, there is no extrinsic proof of the process service fee of $70. Nonetheless, given that Plaintiffs' counsel's

---

[4] Because the Court finds the requested fee to be reasonable, it will not address whether rates and number of hours expended on this case, as reflected in Plaintiffs' counsel's billing records, are themselves reasonable.

requested total award of $11,981.33 in fees and costs is still well below the total lodestar amount, the Court finds that the requested award is fair and reasonable.

## CONCLUSION

For the reasons set forth above, the Court finds the proposed settlement to be fair and reasonable, and the Settlement Agreement as filed at ECF No. 34-1 is hereby APPROVED.

Plaintiffs' counsel is to receive $11,981.33 for attorneys' fees and costs, and Plaintiffs are to receive the balance of $23,018.67, allocated to each of the three Plaintiffs as set forth in the Settlement Agreement.

The Court thus dismisses this case with prejudice pursuant to the parties' stipulation, Exhibit A to the Settlement Agreement, which has been signed and will be docketed separately.

The Clerk of Court is respectfully directed to close the case.

Dated: June 22, 2023
      White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge